## In re DI COLA.

(Circuit Court of Appeals, Third Circuit. November 10, 1914.)

### No. 1860.

BANKRUPTCY (§ 272*)—TRUSTEE—SETTLEMENT OF ACCOUNTS.

A trustee in bankruptcy and his counsel, after a successful prosecution of the bankrupt and others for concealing property of the estate, made a settlement by which the defendants restored the property and also paid a sum in cash to be used in paying the cost of the criminal case, including attorney's fees and also the expenses of administration of the estate, and the money was so used by the attorneys with the knowledge of the creditors. *Held* that, while such money belonged to the estate, to be held and accounted for by the trustee as other property, it was within the discretion of the court to refuse to surcharge his account further than to deny him credit for any part of the expenses of administration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

Petition for Revision of Proceedings of the District Court of the United States for the Western District of Pennsylvania, in Bankruptcy; James S. Young, Judge.

In the matter of Vincent Di Cola, bankrupt. On petition to revise an order settling the accounts of the trustee. Affirmed.

Albert Y. Smith, of Pittsburgh, Pa., for petitioner.

Edw. Y. Breck, of Pittsburgh, Pa., for excepting creditors.

·Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

J. B. McPHERSON, Circuit Judge. This is a petition to revise an order made by the late Judge Young in the District Court for the Western District of Pennsylvania, distributing a fund in bankruptcy. The facts upon which the order is based are found by the learned judge, and in this proceeding are to be taken as true. His opinion—which has not been reported—is as follows:

This case comes before us upon the report of the referee and exceptions thereto by the creditors and by the trustee. The history of this bankruptcy proceeding is necessary to an understanding of the case.

The trustee, having received information that Di Cola, the bankrupt, had concealed his assets, the trustee, through his attorneys, brought prosecutions against Di Cola and his confederates, Ciauri and Blandi, in the court of quarter sessions of the county of Allegheny, in this district, and they were found guilty. Thereupon the defendants, on March 8, 1911, delivered to H. E. Brooks, Jr., the trustee in bankruptcy, and to John N. Piatt, his attorney, certain goods and merchandise and the sum of $2,500 in cash, this delivery being evidenced by the following writing:

"We, H. E. Brooks, Jr., trustee in bankruptcy of the estate of Vincent Di Cola, and John N. Piatt, attorney, do hereby certify and declare that we have this day received bill of sale from Giacomo Blandi, A. Morturano Blandi, and Vincenzo Ciauri for the goods, wares, merchandise, etc., contained in the store rooms and buildings situate at No. 401 and 403½ Larimer avenue, and at the corner of Laurel and Edmund streets, Pittsburgh, Pa., and of the goods held·in storage in the Steubenville Transfer & Storage Company, in the name of G. Blandi, together with the sum of twenty-five hundred dollars ($2,500.00) in cash, to be returned, however, to the said Giacomo Blandi, A. Morturano Blandi, and Vincenzo Ciauri, in the ·event of the court of quarter sessions of Allegheny county in certain proceedings therein pending between the commonwealth of Pennsylvania and Vincent Di Cola et al., refusing or failing to suspend sentence of imprisonment upon the above-named parties, upon payment of costs.                    ·H. E. Brooks, Trustee.
                                        "John N. Piatt, Attorney.

"Witness: William A. Jordan,
     "March 8, 1911."

The purpose of this transaction is shown by the evidence to have been to induce the creditors to consent to leniency being extended to the defendants by the court of quarter sessions. The defendants were treated by the court with such leniency that the trustee and his attorneys were allowed to retain the goods and money. It appears from the evidence that the $2,500 (to be exact, $2,495) was received by Piatt, attorney for the trustee, who did not pay it over to the trustee, but deposited it to his own account and distributed it ·by paying to the trustee $500 thereof, and the balance to certain expenses to detectives, witnesses and others, including the counsel fees to himself and as-.sociate in the criminal proceeding. This conduct on the part of Piatt and the trustee presents an unusual and, we hope, a very rare state of affairs in the administration of bankrupts' estates.

Let us clearly state at the outset that the trustee owed the duty to the creditors of securing for them the assets of the bankrupt. It was his duty to investigate, to find and secure the assets, and to use the law to aid him. He was authorized to and did employ attorneys to advise and assist him in the performance of his duties, and these attorneys owed to him and to the court of which they were officers the duty of advising and assisting him in securing the assets. The duty of each was plain. The trustee and his counsel evidently misunderstood their relation to the bankruptcy case, and when the

settlement after conviction of the criminal case was proposed, they undoubtedly regarded the settlement as to the $2,500 as having nothing to do with the bankruptcy proceeding, for they submitted to the creditors the proposition of settlement, fully informed them that the goods surrendered were to go to the trustee for sale and the fund arising therefrom to be distributed by the trustee to the creditors, and the $2,500 to be used for the expenses of the criminal proceeding, including the attorney's fees of Piatt and his associate, Stein, and the expenses of the administration of the bankrupt's estate, so that the proceeds of the stock of goods surrendered might go to the creditors free of the expenses of administration. The evidence shows that not only was this all represented to the creditors, but to the court of quarter sessions when the defendants were called for sentence. The evidence before the referee clearly shows this, and also that that was still their belief at the time of the hearing before the referee. We may conclude, therefore, that the creditors, the trustee, and the counsel for the trustee had the erroneous belief that they might receive the $2,500 from the defendants, consider it as a fund separate from the estate, and apply it to the expenses of prosecution and to the expense of administering the general estate of the bankrupt without bringing it into court as part of the estate, where the expenses might have been investigated and paid. How they could have had such a belief is difficult to understand, when we consider that the trustee—in unearthing the concealed goods, in his investigation thereof, in his efforts to punish the fraudulent debtor and his associates for the concealment of the goods, in his negotiations for the settlement and leniency with the defendants—was acting as the representative of the estate, and was using all the weight that he had as such representative and of the creditors back of him in the prosecution and subsequent efforts at settlement. The receipt of the trustee and his attorney makes no distinction between the goods surrendered and the cash. Fairly considered, why should a part of the consideration, to wit, the goods, be regarded as belonging to the estate, and the other part, to wit, the money, $2,500, be not so regarded? The evidence clearly shows that the creditors, the trustee, and attorneys for the trustee had the erroneous belief that assets belonging to the estate could be partly distributed by the consent of the creditors. The assets of the bankrupt, from whatever source derived, belong to the estate, must be collected by the trustee for the estate and accounted for by him to the court. The $2,500 cash was part of the estate clearly to be accounted for by the trustee, and primarily liable for expenses, those expenses to be determined upon a proper hearing after the money had been accounted for and the expenses passed upon. This court unqualifiedly condemns any attempt on the part of the receivers, creditors, or attorneys in a bankruptcy proceeding to dispose of any part of the bankrupt estate except in the manner prescribed by the Bankruptcy Act, and that is by bringing into the hands of the officers having charge of the estate all the assets thereof, by the filing of accounts showing on the one side the money received and on the other the credit claimed.

While the referee was of opinion that this money was part of the bankrupt estate, he refused to surcharge the trustee with it because it did not come into his hands, but was received and distributed by Piatt in paying the expenses of the criminal case. We cannot escape from the conclusion that the trustee ought not to be surcharged with this sum. It is true he was negligent in not commencing appropriate proceedings to recover the money from his attorney. He was probably placed in a position where he did not realize his duty in this respect. His attorneys, and the creditors, as shown by the evidence, as we have found, both seem to have regarded the $2,500 paid by the defendants in settlement of the criminal cases as a fund to be used in paying the expenses of those cases and of the administration of the estate, so that the money realized from the sale of the bankrupt's assets would be undiminished by any costs of administration such as trustee's commission and attorney's fees. We can well understand that a trustee placed in this position would not be vigilant to see that the money passed through his hands, but would allow the money to be used for the purpose for which his attorneys, with the knowledge of the creditors, intended to use it. The attorney for the trustee should have paid over to the trustee the $2,500, and it should

have been accounted for by the trustee, and the expenses and attorney's fees claimed as a credit to be passed upon by the court. Unfortunately, by the conduct of Piatt in keeping this money and distributing it, this court is prevented from administering that part of the estate at this time. The attorneys for the trustee, the trustee himself, and the creditors, having, as we have seen, erroneously treated the $2,500 as a fund to be used in paying the expenses of the criminal proceeding and the general expenses of administration, and the trustee by not compelling Piatt to deliver the $2,500 to him, and Piatt by not delivering the money to the trustee, having made it impossible to make that sum a part of the estate, we must, for the purposes of this case, consider whether or not the trustee has claimed credit in his account for expenses that should have been paid out of this fund of $2,500. Let us examine the evidence and see what expenses were to be paid out of this fund.

Stein, on page 4 of the testimony, says: "Many offers of settlement were made, the result of which was that all the creditors were called to my office on April 5th. There were probably 30 creditors present in person or by counsel, and it was explained to them that the bankrupt was willing to turn over all the goods that we claimed had been fraudulently moved, and would also pay the sum of $2,500 in cash to be used in defraying all the expenses the creditors had been put to, so that the goods, when sold, would go to the creditors without any deductions whatsoever."

And again, on page 186: "After the receipt of the money, it was fully explained in my presence at several meetings of the creditors in my office that this money was to be used, in case of a light or suspended sentence on the defendants, to pay all the expenses connected with the criminal proceedings for which the trustee had obligated himself to pay; and in addition to paying all such expenses, the trustee also was to pay all the expenses connected with the bankruptcy proceedings, and every other item of expense connected with all the cases."

Piatt, on page 160, testifies: "The idea was to execute a receipt acknowledging that the three stores' contents, and the goods of Steubenville were to be held by Brooks in escrow, pending the prosecution of the criminal charges in criminal court, and the $2,495 was placed in my hands to pay the fees of the attorneys in the criminal proceedings, and also in the bankruptcy proceedings and cover all the costs of the estate."

Mr. Rodgers, an attorney for a creditor, on page 146, testifies: "We finally signed it on the representations made by Mr. Brooks and by his counsel to us all there that he had $5,300 for distribution to the creditors of the estate; that the entire expenses were to be paid out of a fund of $2,500 which had been raised by the defendants in the criminal prosecution and paid in addition for that purpose."

It is thus conclusively shown that all the expenses of the administration were to be paid from this fund. The creditors had contributed $945 to be used in the prosecution, and that and the $2,500, a fund of $3,445, was in the hands of the trustee and attorneys to pay all the expenses.

We now turn to the account of the trustee to determine whether or not credits are claimed for expenses that should have been paid from the $2,500, and we find that the trustee has claimed credit for $2,610.39 for expenses of administration. The trustee and his attorneys having undertaken to pay those expenses out of the $2,500 received from the bankrupt, they should be held to that and no expenses should be charged against the estate, so that the fund of $4,376 shown on the debit side of the account may go to the creditors undiminished by expenses.

As this will result in the trustee being surcharged with all those expenses, $2,610.39, he is entitled to have returned to him by his attorneys two-thirds of the $2,610.39, less $500 already received by him from Piatt, and the sum of $1,024.51 disallowed by the referee, or the sum of $723.92. That there will be no hesitation on the part of the attorneys to make this payment, we conclude from the testimony of Mr. Stein, who, on page 187, testified: "I want it distinctly understood that the fee to myself, Mr. Piatt, and Mr. Brooks was to be one-third of whatever would be remaining after all the administration expenses were paid. If Mr. Brooks proves that he has any additional expenses, I want it understood that Mr. Piatt and I pay two-thirds of it."

The trustee must be surcharged with all the items on the credit side of his account, leaving the balance for distribution, the amount shown on the debit side of his account, namely, $4,376.

We are not to be understood as giving countenance to the practice exemplified by this case of allowing any portion of the estate to be administered except in the way prescribed by the Bankruptcy Act, and that is by accounting for all the assets on the one side and the expenses on the other, and it is only because the trustee and his attorneys, with the consent of the creditors, have put the case in the present condition that, in order to do equity among all the persons interested, we have disposed of the case in accordance with the plan adopted by the parties as shown by the evidence.

Distribution was thereupon directed, and the controversy has now been brought to this court by the petition under consideration.

Upon the foregoing facts, we find no error that needs correction, and accordingly the order is affirmed.